IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

CAROLYN JONES,                        *

        Plaintiff,                    *

vs.                                   *
                                            CASE NO. 3:13-CV-40 (CDL)
UNIFIED GOVERNMENT OF ATHENS-  *
CLARKE COUNTY, *et al.*,
                                      *
        Defendants.

_____    *

<u>O R D E R</u>

During a man-hunt for a violent suspect who allegedly shot
two police officers, several law enforcement agencies executed a
warrant to search for the suspect at Plaintiff's residence.  As
it turns out, the suspect was not there.  Having to endure a
several hour wait outside her home and suffering damage to
property due to the search, Plaintiff seeks compensation from
the law enforcement officers who participated in the search and
their respective agencies.  Plaintiff alleges that their conduct
violated her Fourth Amendment right to be free from unreasonable
searches and seizures and her Fourteenth Amendment rights to Due
Process and Equal Protection and that they are liable for false
imprisonment, false arrest, and malicious prosecution under
Georgia law.[1]

_____

[1] Plaintiff also complains of an alleged violation of the Freedom of
Information Act, but because she fails to address this claim in her

Agents of the Federal Bureau of Investigation ("FBI") and officers from the Athens-Clarke County Police Department participated in the search.[2]  Plaintiff asserts claims for damages against the federal agents and local police officers and their respective agencies.  In addition, Plaintiff seeks to enjoin them from continuing policies and practices of unreasonably executing search warrants.

Plaintiff names the following federal defendants:  the FBI; the United States Department of Justice ("DOJ"); Mark F. Giuliano,[3] in his individual and official capacity as FBI Special Agent in Charge; Daron Cheney, in his individual and official capacity as FBI Special Agent; and Eric Holder, in his individual and official capacity as United States Attorney General and head of the DOJ (collectively, the "Federal Defendants").[4]  Although Plaintiff is represented by counsel, neither her Complaint nor her briefing is clear as to the basis for her claims against the Federal Defendants.  The Court

---

brief opposing summary judgment, this claim is deemed abandoned. *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995).  Further, Plaintiff cites 42 U.S.C. § 1981 in her Complaint but makes no reference to her race or racial discrimination of any kind in her filings.  Therefore, the Court also deems this claim abandoned.

[2] The Court previously dismissed without prejudice the following defendants from this action: the Georgia Bureau of Investigation ("GBI"), GBI Director Vernon Keenan in his individual and official capacity, Athens-Clarke County Sheriff Ira Edwards, Jr. in his individual and official capacity, and an Officer Parker.

[3] Plaintiff mistakenly spells Giuliano's last name as Guiliani.

[4] The Court assumes for purposes of these motions only that Plaintiff intends to sue Cheney and Holder in their individual and official capacities.

assumes that she intends to assert federal claims pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 2671-80, and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

Plaintiff names the following local government Defendants: the Unified Government of Athens-Clarke County; Joseph Lumpkin, in his individual and official capacity as Chief of the Athens-Clarke County Police Department; and Mike Hunsinger and Ryan McGee, in their individual and official capacities as officers with the Athens-Clarke County Police (collectively, the "Athens-Clarke County Defendants").[5]  She asserts claims against these Defendants for the alleged constitutional violations pursuant to 42 U.S.C. § 1983 and for state law tort claims.

The Federal Defendants have filed a motion to dismiss for insufficient service and a motion for summary judgment (ECF No. 34).  The Athens-Clarke County Defendants have filed a motion for summary judgment (ECF No. 30).  For the reasons explained in the remainder of this Order, the Court grants the Federal Defendants' motion to dismiss and the Athens-Clarke County Defendants' motion for summary judgment.

---

[5] The Court assumes for purposes of these motions only that Plaintiff intends to sue Hunsinger and McGee in their individual and official capacities.

I.    **The Federal Defendants' Motion (ECF No. 34)**

The Federal Defendants seek dismissal of all claims against them based on Plaintiff's failure to properly serve them under Rule 4 of the Federal Rules of Civil Procedure.  They also seek summary judgment on the merits of Plaintiff's claims.  Since service is jurisdictional, the Court first addresses the Federal Defendants' service defense.  Remarkably, Plaintiff, who is represented by counsel, failed to present any argument in response to the Federal Defendants' motion to dismiss for insufficiency of service; nor is there any evidence in the record that the Federal Defendants were ever properly served.

After Plaintiff filed her Complaint in state court, the Federal Defendants removed the action to this Court in April 2013.  The Federal Defendants raised failure to effect proper service as a defense.  In fact, the United States Attorney's Office sent two letters to Plaintiff explaining that the United States would not be waiving service and that the attempts at service of process on the United States were insufficient. Letter from M. Moore to J. Mathis (May 6, 2013), ECF No. 11; Letter from M. Moore to J. Mathis (May 16, 2013), ECF No. 15. In response, Plaintiff did make another attempt to serve the civil-process clerk of the United States attorney's office in Macon, Georgia, addressing the FBI, Holder, and Giuliano as Defendants.  Fed. Defs.' Mot. for Summ. J. Ex. A, Service

Envelopes, ECF No. 34-2.  But Plaintiff made no other attempts at service according to the present record.

To serve a United States agency or officer in an official or individual capacity, a party must properly serve the United States in addition to other requirements.  To serve the United States by mail in the Middle District of Georgia, a party must send a copy of the summons and complaint by registered or certified mail to (1) the civil-process clerk at the United States attorney's office in Macon, Georgia and (2) the Attorney General of the United States at Washington, D.C.  Fed. R. Civ. P. 4(i)(1).  Plaintiff failed to present any evidence that she appropriately mailed a copy of the summons and complaint to the Attorney General.  Plaintiff also failed to present any proof that she sent a copy of the summons and complaint by registered or certified mail to the agencies themselves pursuant to Rule 4(i)(2).  And there is no evidence that Plaintiff served Giuliano, Cheney, or Holder in their individual capacities pursuant to Rule 4(i)(3) and 4(e).

Although the Federal Defendants raised insufficiency of service at the inception of this litigation, Plaintiff has still failed to properly serve these Defendants more than a year since the action was initiated.  Moreover, Plaintiff provided no excuse for failing to effect timely service.  Accordingly, the Federal Defendants' motion to dismiss (ECF No. 34) is granted.

Fed. R. Civ. P. 4(m). Although this dismissal is without prejudice, the Court finds that even if Plaintiff would be barred from re-filing her Complaint against these Federal Defendants because of the expiration of the statute of limitations, this dismissal is warranted in light of Plaintiff's failure to provide any excuse for failing to serve the Federal Defendants in a timely manner. The Court thus grants their motion and dismisses all claims against them.[6]

## II. The Athens-Clarke County Defendants' Motion (ECF No. 30)

The Athens-Clarke County Defendants (hereinafter, "Defendants") seek summary judgment on all claims. The individual Defendants argue that they are entitled to qualified immunity on the § 1983 claims and official immunity on the state law claims. The Unified Government of Athens-Clarke County maintains that it cannot be liable pursuant to § 1983 because no evidence exists that it had any policy or practice that played any role in the alleged constitutional violations. It also claims that it is entitled to sovereign immunity on the state law claims.

---

[6] The Court notes again that Plaintiff is represented by counsel. Therefore, this dismissal should come as no surprise and is distinguishable from those cases in which a *pro se* litigant may be entitled to some benefit of the doubt. Quite frankly, Plaintiff would be hard-pressed to show any prejudice from this dismissal. A review of the Federal Defendants' motion for summary judgment reveals that even if they had been properly served, they are likely entitled to summary judgment on the merits.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).   In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).   A fact is *material* if it is relevant or necessary to the outcome of the suit.  *Id.* at 248.  A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party.  *Id.*

FACTUAL BACKGROUND

Because Plaintiff failed to file responses to Defendants' statement of material facts in accordance with Local Rule 56, the Court deems those material facts which are supported by citations to the record as admitted and reviews them to determine whether a genuine fact dispute exists.  M.D. Ga. R. 56; *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009).  Those facts are as follows.

On the afternoon of March 22, 2011, a kidnapping and armed robbery victim reported that he had just escaped from the trunk of a vehicle after being robbed at gunpoint by Jamie Hood.

Defs.' Mot. for Summ. J. [hereinafter Mot.] Ex. 1, Affidavit/Application & Search Warrant 1-2, ECF No. 30 at 4-5. When interviewed later, the victim told law enforcement that Hood told him before the incident that he was going to kill a police officer. *Id.* at 1, 4. The Athens-Clarke County Police Department dispatched Officer Tony Howard, who was familiar with Hood, to apprehend him. *Id.* at 3. Howard identified Hood's brother driving a vehicle and initiated a traffic stop. *Id.* at 2-3. Hood was also in the vehicle but jumped out of the passenger side, ran toward Howard inside his vehicle, and shot him. *Id.*; Mot. Ex. 3, Lumpkin Decl. ¶ 4, ECF No. 30 at 18. While fleeing the area, Hood shot another officer, Buddy Christian, who died at the scene. Affidavit/Application & Search Warrant 2; Lumpkin Decl. ¶ 5. A woman also reported that she was carjacked at gunpoint that afternoon and later identified Hood as the assailant. *Id.* at 3. Federal, state, and local law enforcement collaborated to locate and apprehend Hood.

Plaintiff's daughter-in-law told law enforcement that she saw Hood at Plaintiff's residence heavily armed with firearms the morning of March 23, 2011 when she went to pick up her child. *Id.* at 3-4; *see* Jones Dep. 24:2-25:24, ECF No. 33 (describing how the informant had a child with and later married Plaintiff's son). GBI Agent Rebecca Shaw followed up on the tip

8

and interviewed the informant on March 24, 2011. Affidavit/Application & Search Warrant 3-4. Based on the above facts, Detective Charles Ivey of the Athens-Clarke County Police Department applied for a search warrant for Plaintiff's residence with a "no knock" provision, which a magistrate judge issued on March 24, 2011 at 12:30 P.M. *Id.* at 1-6.

When law enforcement began gathering outside Plaintiff's residence on the morning of March 24, 2011, Plaintiff came out in a robe with no buttons, a bra, night pajamas, and bedroom shoes with no socks. Jones Dep. 59:16-21. She was not permitted to re-enter the house during the search. After about an hour or two, an agency offered her a coat, which she declined. *Id.* at 59:25-60:18.

The search lasted until approximately 4:00 PM; it took that long because law enforcement had to take special precautions to search the house given their understanding that the suspect was armed and dangerous. Guerra Dep. 30:5-31:20, ECF No. 37. First, the officers attempted to negotiate with any occupants in the house to surrender, and then they sent a University of Georgia Police Department robot into the house to search for occupants. *Id.; see also id.* at 17:3-15 (estimating four hours of preparation, including one hour for the robot search). They also sent a police dog into the house to detect any occupants before sending officers inside. *Id.* at 31:21-32:15.

9

During those efforts, the FBI SWAT team arrived on the scene between 11:00 AM and 12:00 PM. *Id.* at 9:3-18. The FBI SWAT team planned their entry and spoke with the informant, who was on the scene in a GBI vehicle, about the layout of the house. *Id.* at 12:19-13:5; 26:25-28:1. They received information that there were compartments in the house, including a trap door in the bathroom floor, where Hood could be heavily armed and hiding. *Id.* at 22:8-23:1. They planned to locate any individuals inside the house by "standard operation of close-quarter battle," while other members secured the exterior, including vehicles and outbuildings.[7] *Id.* at 13:1-14:4. After planning their entry and waiting for law enforcement to obtain the search warrant and complete their other efforts, the FBI SWAT team made initial entry into the house. Guerra Dep. 17:3-6, 37:4-18. Agent Lawrence Guerra of the FBI SWAT team recalls that his partner might have thrown a flash bang, *id.* at 18:17-24, which is "a diversionary device [that] sets off a loud bang and a very big flash [of] bright light . . . to divert someone's attention if they are waiting for you when you're coming through that area," *id.* at 21:14-24. The FBI SWAT team cleared the house and left around 4:00 PM. *Id.* at 33:5-8. Law enforcement

---

[7] FBI SWAT team training and certification includes "close-quarters battle, which is entering and securing structures." *Id.* at 7:15-8:4.

apprehended Hood at another residence the next day. *Id.* at
34:17-35:13.

   A.   The Individual Defendants

   Lumpkin is the Chief of Police for Athens-Clarke County.
Lumpkin states that Plaintiff was not in custody and that he did
not direct any of his officers "to detain her in any fashion" or
prevent her from relieving herself in private. Mot. Ex. 3,
Lumpkin Decl. ¶ 15, ECF No. 30 at 22. Lumpkin saw her talking
to family members at the scene. *Id.* Plaintiff only saw Lumpkin
once as he was leaving. Jones Dep. 55:10-25.

   Hunsinger, a lieutenant with the Athens-Clarke County
Police Department, was at the command center established to
apprehend Hood on March 24, 2011. Mot. Ex. 5, Hunsinger Decl.
¶¶ 2-3, ECF No. 30 at 26-27. When the information about
Plaintiff's residence came in, GBI Director Vernon Keenan
expressed a desire to go there. *Id.* ¶¶ 3-4. Hunsinger drove
him there because he was already familiar with the residence.
*Id.* ¶ 4. Hunsinger did not participate "in any aspect of the
actual search of the premises," did not touch Plaintiff, and did
not issue any directions regarding Plaintiff. *Id.* ¶¶ 5-6. He
did observe Plaintiff interacting with family members and others
at the scene. *Id.* ¶ 5. Even though Plaintiff did not see him
or otherwise know he was there, she explained that she included

Hunsinger in the suit because he was one of the officers out there and "they all work together."  Jones Dep. 58:1-12.

McGee was head of the Athens-Clarke County Police Department Strategic Response Team.  Mot. Ex. 6, McGee Decl. ¶ 2, ECF No. 30 at 29.  At the scene, that team functioned as a backup team for the FBI SWAT team making first entry into the house.  *Id*. ¶ 4.  McGee and his team entered the house after the FBI SWAT team to conduct a secondary search.  McGee and his team did not use flash bangs or otherwise cause damage to the property.  *Id.* ¶ 5.

DISCUSSION

Plaintiff argues in her brief that the search was unreasonable based on several factual allegations that are not reflected in the statement of material facts and citations to the record considered by the Court.  While the Court acknowledges the distressing nature of Plaintiff's allegations, Plaintiff, through her counsel, had a duty to follow the Court's rules and file a statement of material facts with specific citation to the record in support of those allegations.  Moreover, if she did not wish to be bound by Defendants' statement of material facts, she had a duty to at least deny Defendants' factual statements.  For some inexplicable reason, Plaintiff's counsel did neither.  Notwithstanding the dereliction of Plaintiff's counsel, the Court has carefully

12

reviewed Defendants' citations to the record and determined that no genuine dispute of material fact exists.   The Court also notes that Plaintiff's brief opposing summary judgment, which is remarkable for its scant citation to relevant authority, is entirely unpersuasive.   The Court first addresses Plaintiff's federal claims and then turns to her state law claims.[8]

A.   Federal Claims

It is clear that the individual Defendants are entitled to qualified immunity on Plaintiff's § 1983 claims.   Qualified immunity shields government officials performing discretionary functions "from liability for civil damages insofar as their

---

[8] Plaintiff appears to claim for the first time in her responsive brief that Defendants should be liable because the tip from her daughter-in-law was later discovered to be fabricated.   Plaintiff never raised any complaints about the search warrant itself or a lack of probable cause in the Complaint, which complains only of how law enforcement executed the search warrant.   While Defendants provided convincing argument that no officer was plainly incompetent in concluding that the warrant should issue under all the facts and circumstances based on *Malley v. Briggs*, 475 U.S. 335 (1986), and its progeny, the Court need not reach the issue because it is not properly before the Court.   *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (per curiam) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.").

The Court also notes that in addition to her claims for damages, Plaintiff seeks injunctive relief in her Complaint.   While no party specifically addressed the issue, the Court finds these claims moot because the man-hunt and search of Plaintiff's residence occurred over three years ago.   *See Bourgeois v. Peters*, 387 F.3d 1303, 1308 (11th Cir. 2004) ("Past injury from alleged unconstitutional conduct does not in itself show a present case or controversy regarding injunctive relief, if unaccompanied by current adverse effects.").   Plaintiff may assert claims for damages for past injury, and there is nothing in the record indicating a reasonable expectation that Plaintiff would be subjected to the same action again.   *See id.*   Therefore, the Court finds no actual case or controversy over which to exercise jurisdiction for Plaintiff's claim for injunctive relief, and it is therefore dismissed.

conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To avail oneself of qualified immunity, the official first must "prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks omitted). Then "the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Id.* It is beyond reasonable dispute that the law enforcement officers here were acting within the scope of their discretionary authority when executing a search warrant. Therefore, to overcome the defense of qualified immunity, Plaintiff must point to evidence from which a reasonable factfinder could conclude that (1) the official's conduct violated a constitutional right and (2) the right was clearly established at the time. *See Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009) (holding that a court has discretion to decide which of these two prongs to address first). Plaintiff failed to carry this burden.

The record establishes that once Plaintiff exited the house, she could not go back inside during the search operation, which lasted over four hours. The operation involved several law enforcement agencies coordinating and executing the search

of her residence, pursuant to a search warrant for an armed murder suspect, in escalating steps for safety reasons. Plaintiff remained on the property and was seen with family members. Although she was minimally dressed in sleepwear, she declined a jacket offered by an officer an hour or two into the operation. Pretermitting whether these circumstances establish that Plaintiff was detained, they do not demonstrate that any such detention was unreasonable or unconstitutional under the circumstances. *See Michigan v. Summers*, 452 U.S. 692, 705 (1981) (holding that officers may lawfully detain occupants of a premises in the immediate vicinity while executing a search warrant of that premises). But the Court does not even have to resolve this issue because Plaintiff's claims suffer from a more fundamental flaw: she failed to point to any evidence that the individual Defendants she named were involved in the specific conduct of which she complains.

Plaintiff failed to dispute that Lumpkin did not detain her or direct his officers to do so, that Hunsinger was only present at the scene to give Keenan a ride and issued no directions regarding Plaintiff, and that McGee and his team did not use flash bangs or otherwise cause damage to the residence when conducting the secondary search after the FBI SWAT team's initial search. The summary judgment record simply contains no evidence from which a reasonable factfinder could conclude that

the individual Defendants participated in the conduct that Plaintiff alleges violated her constitutional rights, and it certainly does not support a finding that their conduct violated a clearly established right of which they should have been aware. They are therefore entitled to qualified immunity.

To the extent that Plaintiff may suggest that the individual Defendants should be liable in their supervisory capacity, that claim also fails. While a government official may be subject to supervisory liability absent direct participation, there must still be a causal connection between the actions of the supervising official and the alleged constitutional violation. *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (noting that supervisory liability cannot rely on respondeat superior or vicarious liability). Before imposing such liability, Courts must find that a supervisor failed to correct subordinates after a history of widespread abuse of constitutional rights that would put the supervisor on notice of a need to correct them, or that a supervisor's "custom or policy . . . resulted in deliberate indifference to constitutional rights." *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003); *see also Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990) (explaining that the widespread abuse "must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences"). No such evidence exists here. The

record contains no evidence from which to infer that any of the individual Defendants directed any subordinates "to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Gonzalez*, 325 F.3d at 1235.  For the reasons previously explained, Defendants Lumpkin, Hunsinger, and McGee are entitled to qualified immunity on Plaintiff's § 1983 claims against them in their individual capacities.

Plaintiff's claims against the individual Defendants in their official capacities are treated as claims against their employer, Athens-Clarke County. *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985).  Plaintiff failed to produce any evidence supporting her § 1983 claim against Athens-Clarke County, which can only be liable if its policy or custom was the moving force behind the constitutional violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Grech v. Clayton Cnty.*, 335 F.3d 1326, 1330 (11th Cir. 2003).  Although Plaintiff makes general conclusory allegations about unspecified policies, she failed to produce evidence showing what those policies are and how they contributed to the alleged constitutional violations. At summary judgment, general arguments in a brief cannot create genuine factual disputes.  Plaintiff does allege that Chief Lumpkin was the final policymaker for Athens-Clarke County, but she ignores the undisputed fact that he did not take any of the

actions alleged to be unconstitutional.  Plaintiff simply failed
to point to any evidence that would allow a reasonable jury to
infer the existence of an official policy or unofficial custom
of Athens-Clarke County that caused a deprivation of
constitutional rights.  Accordingly, Athens-Clarke County is
entitled to summary judgment on Plaintiff's § 1983 claim.

> B.   State Law Claims

Plaintiff asserts state law claims of false imprisonment,
false arrest, and malicious prosecution against the Athens-
Clarke County Defendants.[9]  The Unified Government of Athens-
Clarke County has sovereign immunity from these claims, unless
that immunity has been waived.  *See Gilbert v. Richardson*, 264
Ga. 744, 747, 452 S.E.2d 476, 479 (1994) (holding that the
extension of sovereign immunity to the state and its departments
and agencies also applies to counties); *see also Athens-Clarke
Cnty. v. Torres*, 246 Ga. App. 215, 217, 540 S.E.2d 225, 227
(2000) (holding that the Unified Government of Athens-Clarke
County is treated as a county for tort liability purposes).
Since Plaintiff failed to demonstrate that this sovereign
immunity has been waived, Athens-Clarke County is entitled to
summary judgment on Plaintiff's state law claims.

---

[9] In her responsive brief, Plaintiff appears to raise for the first
time a claim under the Georgia Tort Claims Act, which the Court will
not consider.  *Gilmour*, 382 F.3d at 1315.

The individual Defendants—Lumpkin, Hunsinger, and McGee—seek official immunity from these state law claims.  In Georgia, officers can only be subject to suit if they are negligent in performing ministerial functions or if "they act with actual malice or with actual intent to cause injury" in performing official functions.  Ga. Const. art I, § II, ¶ 9(d).  Plaintiff argues that the execution of a search warrant is a ministerial act.  Am. Compl. ¶ 6, ECF No. 19.  But she is wrong.  A ministerial act "is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty," while a discretionary act "calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed."  *Grammens v. Dollar*, 287 Ga. 618, 619, 697 S.E.2d 775, 777 (2010).  It is clear that executing a search warrant for an armed murder suspect is not a simple act requiring no judgment.  Therefore, to overcome official immunity, Plaintiff must show that Defendants' acts constitute malice.  Plaintiff failed to do so.  Again, the record establishes that Lumpkin did not detain or direct any of his officers to detain Plaintiff in any fashion, that Hunsinger did not participate in the search or issue any orders with regard to Plaintiff, and that McGee caused no damage during his search.

Absent some evidence of malice, Lumpkin, Hunsinger, and McGee are entitled to official immunity.

CONCLUSION

For the reasons explained above, the Court grants the Federal Defendants' motion to dismiss for insufficient service of process (ECF No. 34) and the Athens-Clarke County Defendants' motion for summary judgment (ECF No. 30).

IT IS SO ORDERED, this 31st day of July, 2014.

S/Clay D. Land
_____
CLAY D. LAND
UNITED STATES DISTRICT JUDGE